No. 15-1122 - *Blackrock Capital Investment Corp. et al. v. Fish*

**FILED**
**April 24, 2017**
**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

LOUGHRY, C. J., dissenting, joined by WALKER, J.:

In the majority's apparent eagerness to nullify the substantive agreements at issue, it completely fails to appreciate the constitutionally significant procedural infirmity in the circuit court's grant of summary judgment. Without any justification, the circuit court *sua sponte* constricted a briefing deadline–a deadline the parties had been operating under for nearly five months–and summarily granted a motion for summary judgment without first permitting Blackrock to file its brief in opposition. In so doing, the circuit court gave the motion's opponents only two days from receipt of the proposed order granting the motion to haphazardly launch any counteroffensive. For the same reasons that this Court does not countenance "trial by ambush," I cannot sanction the circuit court's stubborn refusal to timely consider Blackrock's opposition to the motion for summary judgment pursuant to the trial court's longstanding deadline for "full briefing." Moreover, the majority's alleged "*de novo*" review is necessarily flawed because the lower court precluded submission of opposing evidence from Blackrock. The majority lauds itself for conducting a "new, complete and unqualified" review; yet, it fails to acknowledge that Blackrock was denied the opportunity to submit evidence in support of its countervailing arguments. As such, the majority had a dispositive ruling predicated on incomplete briefing to consider on appeal. Accordingly, I respectfully dissent.

1

The facts are not in dispute, yet the majority disturbingly finds them unpersuasive. The circuit court, by letter dated May 6, 2015, created a June 12, 2015, deadline for briefing on the motion for summary judgment filed by the respondent AL Solutions (hereinafter the "respondent").[1] For reasons that are unclear, a few days later the circuit court, by *order* dated May 21, 2015, set the deadline for "full briefing" on indemnification as October 30, 2015. In view of the inconsistency and out of an abundance of diligence and caution, on June 12th, the petitioners (and other parties) filed a "Notice of Intent to Respond" to ensure that the circuit court was apprised of their intent to oppose and substantively respond to the motion for summary judgment by the October 30th deadline instituted by the circuit court in its order. This deadline, upon which the parties and their counsel undoubtedly relied in allocating their time and resources for the next five months, remained in effect and was undisturbed until October 8, 2015.

On this date, the circuit court directed the respondent's counsel to prepare an order "*granting the Motion*" and submit it to the court and opposing counsel by October 13, 2015 (emphasis added). Upon receipt, the circuit court indicated that the petitioners would then have until October 15–a mere two days–to provide "comments"[2] to the order. In short,

---

[1] This motion involved the partially dispositive issue of indemnification.

[2] Although not expressly referenced by the circuit court, the "comments" to the proposed order permitted in its October 8, 2015, letter appear to mirror those contemplated by Trial Court Rule 24.01(c). As is obvious from the import of the rule, such "comments" or "objections" are not designed to be substantive opposition to the granting or denial of the

2

the circuit court initially set a deadline for filing opposition to the motion for summary judgment, but made its ruling on the motion before even seeing, *much less considering*, the antithetical arguments of Blackrock. Even more inscrutable was the circuit court's summary denial of the petitioners' motion to enlarge the "new" deadline a mere two weeks to comport with the original October 30th deadline and permit the petitioners to file a substantive response. The circuit court, citing a conversation with this Court's Clerk, indicated that it had assured the Clerk an order on the motion would be entered by October 15th.[3] Why the circuit court would have made such an assurance when it had previously established the October 30th deadline for "full briefing" simply defies inquiry.

As if the foregoing were not sufficient grounds to reverse the circuit court's grant of summary judgment, the circuit court compounded its inexplicable refusal to permit the submission of a substantive response by further refusing to consider the petitioners' "comments" to the proposed order granting summary judgment. In keeping with the circuit court's custom, the petitioners and another party provided their requested "comments" to the circuit court's law clerk, whose email auto-reply indicated she was out of the office with "limited" email access. The petitioners also faxed their comments to the Hancock County

---

motion but, rather, objections to the wording of the order.

[3]It appears that two matters concerning the interpleader of funds were pending before this Court by way of direct appeal and a writ. It is presumably the interplay between the merits of those appellate matters and the substance of the motion for summary judgment at issue which prompted the circuit court's discussions with this Court's Clerk.

Circuit Clerk and, upon inquiry by the circuit court's secretary the following day (the same day the circuit court was preparing its order for entry), emailed them to her as well. The circuit court indicated that it was, in spite of these efforts, unaware of the petitioners' comments until after it had entered its order and refused to reconsider its ruling.[4]

I am hard-pressed to find any apposite case law taking a lower court to task for altering its own briefing deadline to the unilateral detriment of one of the litigants. The reason for this is obvious–when an altered time frame is at the center of a case, it is typically due to a *litigant's* failure to adhere to a time frame or a *litigant's* request to extend a judicially-created time frame. In this unprecedented instance, the circuit court itself created the horological prejudice by unilaterally pulling the rug out from under a litigant, depriving Blackrock of an opportunity to file a responsive motion to a dispositive pleading. While this admittedly peculiar ruling lacks precedent, this Court has made it abundantly clear that rulings on motions, particularly *dispositive* motions, must not catch litigants "by surprise" or unfairly curtail a party's ability to respond. *See Riffle v. C.J. Hughes Const. Co.*, 226 W. Va. 581, 589, 703 S.E.2d 552, 560 (2010) ("[A] circuit court is required to give the parties notice . . . and a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. In this way, no litigant will be taken by surprise[.]"); *Elliott v. Schoolcraft*, 213 W. Va. 69, 576 S.E.2d 796 (2002) (reversing grant of summary judgment

_____

[4]The majority conveniently omits these facts and misstates that the circuit court's law clerk was "on vacation," rather than out of the office with "limited" access to email.

4

where dispositive motions were filed so quickly, opponent lacked opportunity to conduct discovery); *Kopelman & Assocs., L.C. v. Collins*, 196 W. Va. 489, 495, 473 S.E.2d 910, 916 (1996) ("The 'reasonable opportunity' language of Rule 12(c) [regarding conversion of a motion from 12(c) to 56] is designed to prevent unfair surprise to the parties."); *Harrison v. Davis*, 197 W.Va. 651, 657 n. 16, 478 S.E.2d 104, 110 n. 16 (1996) ("Failure to treat [a 12(b) motion] . . . as one for summary judgment and to provide the litigants with notice and an opportunity to respond can constitute reversible error.").

The majority's analysis conveniently avoided any discussion of how the summary judgment ruling necessarily ran afoul of procedural due process. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552,(1965)). This Court has explained that "[p]rocedural due process rights entitle an individual to representation by counsel, notice, an opportunity to be heard, and *the right to present evidence*." *Marcus v. Holley*, 217 W. Va. 508, 527, 618 S.E.2d 517, 536 (2005) (emphasis added). Further, in *State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978) this Court correctly reduced due process to its essential elements stating that "[d]ue process of law is synonymous with fundamental fairness."

In reviewing the facts below, the majority failed to establish (or even mention)

5

whether the circuit court's handling of the summary judgment was fundamentally fair; instead, it merely cajoled the parties with an assurance that it "g[ave] careful and thorough review to the issues raised by" the petitioners and found the issues "well-developed" in general upon its review. How the majority manages to "carefully" and "thoroughly" review issues presented in full by only one side defies scrutiny. How it determines that the issues are "well-developed" when the petitioners never substantively responded to the dispositive motion defies all common sense. Even more suspect is the majority's ludicrous chastising of the petitioners for purportedly never advising the circuit court "what [the] evidence might be" that it would proffer if given an opportunity.[5] Had the circuit court genuinely been interested in a sober consideration of the petitioners' evidence, it would have adhered to the previously-established briefing deadline. Likewise, if the majority were truly interested in conducting the "absolute, perfect, unqualified" review it prides itself for conducting, it would remand this case for the petitioners' submission of evidence in opposition and then consider the matter upon a properly perfected appeal.[6] The petitioners could do little else below other

---

[5]In a similar vein, the majority astoundingly states that the petitioners failed to establish that the circuit court "prevented it" from making a legal argument or submitting evidence in opposition to the motion. The very notion that a party is duty-bound to unceremoniously bombard the circuit court with arguments and evidence *after* the court has ruled on the issue and rejected the party's request to respond in conformity with the Scheduling Order is preposterous. The majority's suggestion, reduced to its barest essentials, requires parties to simply file pleadings, motions, etc. at a time of their choosing in whatever manner they see fit despite court rulings directing otherwise or risk this Court's denial of relief for their failure to act.

[6]The majority, on the one hand, decries the petitioners' representation that it has substantive evidence which could affect the outcome of the complex indemnification

than repeatedly request an opportunity to be fully heard and to present evidence in opposition to the motion–as they are clearly entitled by the Constitution but were repeatedly denied. *See* W. Va. Const. art III, § 10, in part ("No person shall be deprived of life, liberty, or property, without due process of law[.]").

Certainly, this Court has observed that "[t]he adoption of case-specific case management plans is perfectly within the discretion of a circuit court." *State ex rel Almond v. Rudolph*, __ W.Va. __, __, 794 S.E.2d 10, 17 (2016). It is equally true, however, that

---

agreement issue presented because it purportedly never apprised the circuit court regarding the specifics of that evidence. On the other hand, despite its apparent ignorance as to what evidence the petitioners would proffer, it boasts a *de novo* review which is "full, entire, complete[.]"

The majority then states that "only during oral argument did counsel finally indicate" that the petitioners proposed to provide expert testimony about the frequency and typicality of the industry practice the majority finds universally unconscionable; the majority summarily concludes such evidence–*sight unseen*–inadmissible as opinion on a "question of law." Such evidence in no way purports to speak to a question of law; rather, it seeks to educate the uneducated on corporate governance, risk allocation, and the industry practice directly at issue in the indemnification agreement at issue. Moreover, this evidence was outlined on page ten of the petitioners' brief:

> Indeed, the Blackrock Defendants have designated two experts who are expected to offer testimony regarding the relationships between investment companies like BCIC, their advisors, the companies in which they invest. *See* Blackrock Kelso Capital Corporation's And Blackrock Kelso Capital Advisors, LLC's Expert Witness Disclosure, filed January 20, 2015, and who would have been able to offer evidence regarding the procedure used here during the formation of Tygem and AL Solutions had the lower court followed the established deadline.

7

"[t]rial by ambush is not contemplated by the Rules of Civil Procedure." *McDougal v. McCammon*, 193 W. Va. 229, 237, 455 S.E.2d 788, 796 (1995). Dispositive motions, which are routinely the subject of time frames contained in Scheduling Orders,[7] permit the litigants and their counsel to schedule and allocate both time and resources. In marked contrast to the fast-paced fluidity of trial, dispositive motions require, and are typically accorded, sufficient time to conduct a thorough and deliberate review of the evidence to fully address the legal issues presented. Thus, to allow a party to be "ambushed" in regard to such motions is both unnecessary and decidedly improvident.

Further, I wholly reject the respondent's crabbed view of the facts which suggest that the petitioners were not caught off guard and, in fact, had more than 300 days to file their response to the motion for summary judgment. To suggest that the petitioners were dilatory in relying on the court-mandated deadline for responsive briefing is utterly disingenuous.[8] As a practical matter, there is no reason that the petitioners should have

---

[7]"Rule 16(b) of the West Virginia Rules of Civil Procedure [1998] requires active judicial management of a case, and mandates that a trial court 'shall ... enter a scheduling order' establishing time frames for the joinder of parties, the amendment of pleadings, the completion of discovery, the *filing of dispositive motions*, and generally guiding the parties toward a prompt, fair and cost-effective resolution of the case." Syl. Pt. 2, *Caruso v. Pearce*, 223 W.Va. 544, 546, 678 S.E.2d 50, 52 (2009).

[8]Likewise, the majority's insistence that because Tremont and its counsel filed a substantive response to the dispositive motion, the petitioners should have been able to do so misses the point entirely. Due process demands that this Court ensure that the proceedings below were fundamentally fair to *the petitioners*. Considering another party's choice or ability to handle their unique aspect of the litigation differently has quite literally nothing to

devoted costly attorney hours to briefing and marshaling supporting evidence to oppose the motion for summary judgment *months* or even *weeks* before such response was due. The realities of modern litigation suggest that settlement negotiations can and do occur at any time during the course of litigation; thus, to prematurely expend thousands of dollars responding to substantial motions could easily be viewed as irresponsible litigation management and a waste of client funds. As the procedural history of this case makes abundantly clear, this is a complex piece of litigation with many "moving parts," parties, and claims, including the interpleader and distribution of funds; any number of developments could have affected the necessity and/or manner of the petitioners' response to the dispositive motion.

Accordingly, it is pellucid that the circuit court committed a gross abuse of discretion and deprived the petitioners of due process. The majority, in its desperate desire to nullify the indemnification agreement, barely acknowledges this deprivation which is the centerpiece of this appeal. It is indisputable that unilateral alteration of the time frames contained in the circuit court's May 21, 2015, order prejudiced the petitioners and subverted the truth-seeking function of the courts. Unphased by this, the majority apparently concludes that it does not need the benefit of evidence or the guidance of witnesses who are actually

do with whether the petitioners were deprived of the legally-mandated opportunity to provide a substantive response to the dispositive motion.

conversant in the corporate governance and risk allocation methods at the core of this agreement. This case is easily resolved by adherence to the following holding: "A trial court abuses its discretion when its rulings . . . are clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock our sense of justice and to indicate a lack of careful consideration." Syl. Pt. 1, *B.F. Specialty Co. v. Charles M. Sledd Co.*, 197 W.Va. 463, 475 S.E.2d 555 (1996).[9] This case plainly meets those criteria; accordingly, I would reverse and remand with instructions to the circuit court to permit the petitioners to file a response containing its legal arguments and supporting evidentiary bases in opposition.[10]

Therefore, I respectfully dissent.

---

[9]*See also Lipscomb v. Tucker County Comm'n.*, 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999) ("We grant trial court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law.").

[10]Even if the circuit court's ruling remains the same upon remand, the paramount constitutional dictates of due process will have been heeded and the guarantees of fundamental fairness will have been achieved. Any concern for prolonging the litigation or enhanced expense is the consequent byproduct of the trial court's improvident haste–and assuredly not a proper basis upon which to sidestep the due process protections owing to each and every litigant in this state's courts.